UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KATLYN B. [1]                                               Case No. 2:23-cv-867

          Plaintiff,

v.                                                            Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

          Defendants.

**MEMORANDUM OF OPINION AND ORDER**

Plaintiff Katlyn B filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability should be **AFFIRMED**, because it is supported by substantial evidence in the administrative record. The parties have consented to the jurisdiction of the undersigned magistrate judge. *See* 28 U.S.C. §636(c).

**I. Summary of Administrative Record**

On August 26, 2020, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI) alleging she became disabled on March 26, 2020 based upon a combination of physical and mental impairments. After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). At a telephonic hearing held on October 28,

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.

2021, Plaintiff appeared with counsel and gave testimony before ALJ Jessica Hodgson. Vocational Expert Pauline Pegram-Wargel also appeared by telephone. On December 27, 2021, the ALJ issued a written decision, concluding that Plaintiff was not disabled. (Tr. 15-31).

Plaintiff was born on August 6, 1997, and was 22 years old on her alleged disability onset date. (Tr. 29). She has a high school education and has past relevant work as a pharmacy technician and cashier. She has a history of postural orthostatic tachycardia syndrome (POTS), with syncope, dizziness, lightheadedness, loss of consciousness, palpitations, and fatigue.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "syncope, postural orthostatic tachycardia syndrome (POTS), mixed anxiety and depressive disorder, generalized anxiety disorder with panic attacks, persistent depressive disorder, major depressive disorder, panic disorder, generalized anxiety disorder, and social anxiety disorder." (Tr. 17-18). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform light work subject to the following limitations:

> She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; never work at unprotected heights, no moving mechanical parts, and never operate a motor vehicle; occasional work in weather, humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibration; can perform simple, routine tasks; can perform simple work-related decisions; and she can interact frequently with supervisors, coworkers, and the public.

(Tr. 20-21).

Based upon her RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, including marking clerk, office helper, and routing clerk. (Tr. 30). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB and SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) improperly formulating her RFC; and (2) failing to properly evaluate Plaintiff's fibromyalgia. Upon close analysis, I conclude that Plaintiff's arguments are not well-taken.

**I. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation

omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); see also *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528-29 (6th Cir. 1997) (explaining sequential process); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is supported by Substantial Evidence**

*A. ALJ's RFC Determination*

Plaintiff argues first that the ALJ's RFC determination is not supported by substantial evidence because it does not properly account for her mental impairments as well as her functional limitations associated with POTS. Plaintiff's contentions are unavailing.

The RFC is the "most [an individual] can still do despite [his physical and mental] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ determines the claimant's RFC using "all the relevant evidence in [the] case record." Id. Yet it is the claimant's burden to establish her RFC. See id. § 416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); see also *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (claimant bears the burden of demonstrating a more restrictive RFC); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("Plaintiff has the ultimate burden of establishing the existence of disability.").

Here, in formulating Plaintiff's mental RFC, the ALJ found that the opinions of the State agency experts and consultative examiner were persuasive in part, noting that the opinions were not fully supported by the evidence of the record. Namely, in November

5

2020, Christopher Ward, Ph.D., performed a consultative evaluation of Plaintiff and opined that Plaintiff would have "difficulty" understanding and remembering instructions, understanding and responding to questions, and concentrating and focusing. (Tr. 351-56). Dr. Ward further opined that Plaintiff's symptoms "may" impact her social engagement in a work setting and her mood stability in a competitive work setting. (Tr. 356).

Thereafter, in November 2020, following Dr. Ward's evaluation, Karla Delcour, Ph.D., reviewed the record and found that Plaintiff retained the capacity to perform simple tasks, sustain simple tasks without fast pace (ex: without the consistent, fast pace required in assembly line work), interact with others superficially and infrequently, and adapt to settings where duties are relatively static and changes are infrequent and can be adjusted to over time. (Tr. 87-88, 90-92). In April 2021, Ermias Seleshi, M.D., reviewed the record and found that Plaintiff could carry out routine tasks without expectation for sustained close concentration, fast paced performance, or meeting high production standards; interact with others on a brief, intermittent, and superficial basis; and adapt to stable work settings with clear and predictable expectations and infrequent changes in routine. (Tr. 108-09, 111- 13).

With respect to Dr. Ward's suggestion that Plaintiff's symptoms "may" impact her social engagement in a work setting and her mood stability in a competitive work setting, the ALJ found this opinion was not fully persuasive. (Tr. 24, 356).  Notably, the ALJ found these portions inconsistent with Plaintiff's sparce mental health treatment. (Tr. 22-24, 26-27). The ALJ also found Dr. Ward's findings to be inconsistent with subsequent unremarkable mental status examinations performed by Sharon Lyon-Paul, C.N.P. (Tr.

6

24). In this regard, the ALJ noted that Ms. Lyon-Paul reported that Plaintiff appeared alert, oriented, cooperative, and calm with normal speech, clear and linear thought process, intact memory, normal attention and concentration, intact insight and judgment, and appropriate mood and affect. (Tr. 19-20, 25-27, 559, 572, 584-85, 597, 610-11).

Similarly, the ALJ determined that Dr. Delcour and Dr. Seleshi's opinions were somewhat persuasive because they were generally consistent with Dr. Ward's medical opinion. Tr. 28. She found that their medical findings are not fully persuasive because they are not fully supported by the unremarkable mental status examinations documented by Ms. Lyon-Paul. As such, she declined to include more restrictive limitations including more restrictive social interaction limitations due to the unremarkable mental status examinations documented by Ms. Lyon-Paul and the limited course of outpatient mental health treatment.

Plaintiff argues that the ALJ's RFC determination does not properly account for Plaintiff's moderate limitations in maintaining concentration, persistence, and pace and interacting with others. In this regard, Plaintiff contends that the ALJ improperly cherry picked the opinions of the reviewing and examining psychologists and, instead, relied on her lay opinion of the medical evidence to determine which limitations should be included in the RFC. According to Plaintiff, the evidence of record documents Plaintiff's panic attacks, mixed anxiety and depressive disorder, difficulty living independently, irritability, poor sleep, fear of letting others down, difficulty making decisions for herself, purposefully avoiding conflicts and/or confrontations at all costs, tendency to quit jobs when serious discussion or conflict occurs; and her issues with anger and communicating. Tr. 454, 457, 465, 478, 481, 501, 503, 519, 523, 534-535, 537, 543, 702. In light of the foregoing,

7

Plaintiff argues that the record evidence indicates that she may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job. As such, Plaintiff contends that the ALJ's RFC and subsequent hypothetical question to the vocational expert fail to account for Plaintiff's moderate limitations of concentration, persistence, and pace.

Contrary to Plaintiff's contention, however, numerous cases from the Sixth Circuit, have held that limitations similar to those the ALJ included in Plaintiff's RFC adequately addressed the claimant's moderate limitations in concentration, persistence, or maintaining pace. See *Reinartz v. Comm'r of Soc. Sec.,* 795 F. App'x 448, 449 (6th Cir. 2020) (ALJ's hypothetical question that asked if someone could perform work who could "comprehend, retain, and execute simple, routine and repetitive tasks" properly accounted for the earlier finding that she had "moderate limitation in concentration, persistence, or maintaining pace[.]"). *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 (6th Cir. 2014) (concluding that a "limitation to simple, routine, and repetitive tasks" adequately accounted for the plaintiff's "moderately-limited ability 'to maintain attention and concentration for extended periods' "); *Wood v. Comm'r of Soc. Sec.*, No. 19-1560, 2020 WL 618536, at *2–4 (6th Cir. Jan. 31, 2020) (RFC limitation to "performing simple and routine tasks" was not inconsistent with ALJ's step three finding that the plaintiff had moderate limitations in concentration, persistence, and pace because the plaintiff failed to show that the evidence warranted additional limitations). Here, the ALJ's RFC properly accounts for the moderate limitations.

Plaintiff further argues that the ALJ's finding that she could "frequently" interact with supervisors, coworkers and the public is not supported by substantial evidence.

8

Namely, Plaintiff' contends that the state agency psychologists found that Plaintiff could interact with others on a brief, intermittent, and superficial basis. However, as noted above, the ALJ declined to include more restrictive social interaction limitations due to the unremarkable mental status examinations documented by Ms. Lyon-Paul and limited mental health treatment. As noted by the Commissioner, Ms. Lyon-Paul reported that Plaintiff appeared alert, oriented, cooperative, and calm with normal speech, clear and linear thought process, intact memory, normal attention and concentration, intact insight and judgment, and appropriate mood and affect. (Tr. 19-20, 25-27, 559, 572, 584-85, 597, 610-11). Additionally, the record contains treatment notes showing that Plaintiff appeared cooperative, pleasant, and calm (Tr. 310, 318, 392, 395, 655, 704); she demonstrated average intelligence, intact memory, and intact thought processes (Tr. 310, 318, 321, 386, 392, 395, 446, 454, 461, 466); and had appropriate mood and affect (Tr. 386, 392, 395, 413, 417, 421, 436, 440, 446, 454, 461, 466, 489, 719, 725, 731).

Moreover, the vocational expert testified that, if the hypothetical person was further limited to simple, routine, repetitive tasks not at a production rate pace (meaning assembly line work) and occasional interaction with co-workers and the public, the person could perform light and sedentary jobs (Tr. 78-79). For these reasons, the undersigned finds that the ALJ's mental RFC is supported by substantial evidence and should not be disturbed.

With respect to Plaintiff's physical limitations, Plaintiff also argues that the ALJ's RFC fails to fully consider the severity of her postural orthostatic tachycardia syndrome (POTS). Plaintiff's contentions lack merit.

9

In evaluating Plaintiff's physical impairments, the ALJ found the prior administrative medical findings of the state agency providers to be persuasive. (Tr. 28). Notably, the records indicates that in November 2020, Leon Hughes, M.D., reviewed the record and found that Plaintiff had no exertional limitations but she could never climb ladders, ropes, or scaffolds and must avoid all exposure to unprotected heights, dangerous machinery, and commercial driving due to syncope. (Tr. 89-90). In April 2021, Gary Hinzman, M.D., reviewed the updated record and affirmed Dr. Hughes' findings (Tr.110-11). Drs. Hughes and Hinzman considered Plaintiff's postural orthostatic tachycardia syndrome (POTS) demonstrated by the positive tilt table test (Tr. 90, 111).

The ALJ's decision acknowledged the positive tilt table test done by Dr. Addo in October 2020 that resulted in syncope. (Tr. 23, 27, 340, 343). However, the ALJ noted that Dr. Addo's conservative treatment which encouraged Plaintiff to stay hydrated, avoid dehydration, avoide prolonged standing and liberalize salt intake. Dr. Addo prescribed Midodrine, salt tablets and compression stockings. The ALJ noted that there was no evidence of injuries from her alleged six episodes of passing out a month. (Tr. 27, 58). Moreover, as noted by the Commissioner, Plaintiff has presented no medical opinion that her POTS imposed greater limitations than those included in the RFC. Accordingly, the undersigned finds that the ALJ's decision is substantially supported in this regard.

Although Plaintiff may disagree with the ALJ's decision, she has not shown that it was outside the ALJ's permissible "zone of choice" that grants ALJs discretion to make findings without "interference by the courts." *Blakley*, 581 F.3d at 406. Even if a reviewing court would resolve the factual issues differently, when supported by substantial evidence, the Commissioner's decision must stand. *See Foster v. Halter*, 279 F.3d 348,

353 (6th Cir. 2001). Indeed, the Sixth Circuit upholds an ALJ's decision even where substantial evidence both contradicts and supports the decision. *Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1235 (6th Cir. 1993). For these reasons, the ALJ's decision is substantially supported in this regard and should not be disturbed.

### *B. Fibromyalgia*

Plaintiff argues next that the ALJ erred in failing to find that her fibromyalgia was a severe impairment. This contention also lacks merit.

For an impairment to be "severe," it must be expected to last more than 12 months and more than "minimally" affect a claimant's work ability. See 42 U.S.C. § 423(d)(1)(A); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) ("an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience"). In her step two finding, the ALJ noted that Plaintiff also had several impairments he found to be non-severe. (Tr. 18). However, the ALJ found that there is no evidence that any of Plaintiff's non-severe impairments imposed more than minimal functional limitations on the Plaintiff's ability to perform work related activity. Accordingly, the undersigned finds that the ALJ's decision is substantially supported in this regard.

Regardless, even if the Court found the ALJ erred, errors at step two of the sequential analysis will not necessarily require reversal, if the ALJ finds at least one "severe" impairment and therefore continues with the remaining steps in the sequential process. That is because in determining a plaintiff's residual functional capacity and ability to work later in the sequential process, the ALJ must consider even the impairments found not to be "severe" at step two. *See Maziarz v. Secretary of Health and Human Servs.*,

11

837 F.2d 240, 244 (6th Cir. 1987); 20 C.F.R. § 404.1520. Thus, regulations require an ALJ to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone...." 20 C.F.R. § 404.1545(e).

In this case, the ALJ found several "severe" impairments including syncope, postural orthostatic tachycardia syndrome (POTS), mixed anxiety and depressive disorder, generalized anxiety disorder with panic attacks, persistent depressive disorder, major depressive disorder, panic disorder, generalized anxiety disorder, and social anxiety disorder, and, therefore proceeded through the five-step sequential analysis. Even if there was an error, the ALJ's failure to consider Plaintiff's fibromyalgia as "severe" at Step 2 of the sequential analysis, will not necessarily require reversal or remand. Contrary to Plaintiff's claim, the ALJ also reasonably considered her impairments in combination. As stated above, the ALJ found that Plaintiff had several severe impairments. (Tr. 17-18).  She also discussed Plaintiff's non-severe impairments, including, panic attacks, gastroesophageal reflux disease, orthostatic hypertension, incontinence, fibromyalgia, conversion disorder, mild hand tremors, headaches, delayed gastric emptying, chronic pain syndrome and neuralgia of the lower extremities. The ALJ specifically noted that although the record contains the diagnosis of fibromyalgia, there is insufficient evidence to demonstrate compliance with Social Security Ruling 12-2p, Evaluation of Fibromyalgia. (Tr. 18).  As such the ALJ determined that fibromyalgia has not been properly established as a medically determinable impairment.

As noted by the Commissioner, the purpose of the severity inquiry at the second step of the sequential disability evaluation process is merely to screen out claims that are medically groundless. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("as this court has recognized, the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint."). Where an ALJ determines that one or more impairments is severe at step two and proceeds with the sequential process, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error. *See Maziarz*, 837 F.2d at 244 (failure of Secretary to find that an impairment was severe was not reversible error because he found that claimant had other severe impairments); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."). Thus, Plaintiff has not established reversible error because the ALJ did not "screen out" her claim at step two. Rather, she found that Plaintiff had severe impairments at step two and proceeded to the remaining steps of the sequential evaluation process, and explained her reasons for finding that Plaintiff did not have severe fibromyalgia.

Accordingly, the undersigned finds that the ALJ adequately considered all of Plaintiff's conditions in determining her RFC and therefore did not err at step-two of the sequential evaluation.

### III. Conclusion

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and is **AFFIRMED**, and that this case is **CLOSED**.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge
